IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UBU/Elements, Inc., : | | |
| Plaintiff, : | | CIVIL ACTION |
| : | | |
| v. : | | No. 16-2559 |
| : | | |
| Elements Personal Care, Inc., *et al.*, : | | |
| Defendants. : | | |

### MEMORANDUM ORDER

This 22nd day of June, 2016, upon review of Plaintiff's Motion for Temporary Restraining Order, and the Response and Reply thereto, it is **ORDERED** that the Motion is **DENIED** as to the After the Game mark for the reasons expressed herein.

Plaintiff UBU/Elements, Inc. seeks a temporary restraining order against Defendants Elements Personal Care, Inc., Elements Personal Care, LLC, and Warren Chambers to enjoin their use of certain trademarks.  I previously held a hearing on this Motion on June 7, 2016 and granted the Motion in part as it pertains to the Magsoothium mark.  Court's June 8, 2016 Order. The parties have now each submitted supplemental briefing on the Motion as it pertains to the After the Game (ATG) mark, and I have considered those pleadings, the exhibits attached thereto, and the evidence presented at the June 7 hearing.  I conclude that UBU/Elements has not submitted sufficient evidence that they are entitled to a TRO for the After the Game mark.[1]

To obtain this interim injunctive relief, "a movant 'must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted.' " *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (citing *Morton v.*

---

[1] My analysis is limited to the issues in the Motion before me. To the extent the parties wish to make counterclaims against Plaintiff for licensing violations or for defamation, as suggested in the pleadings, those arguments are not before the Court and are not relevant to the question of the ownership of the marks addressed in this Memorandum.

1

*Beyer*, 822 F.2d 364, 367 (3d Cir. 1987)).  To succeed on the merits of its Lanham Act claims, Plaintiff will have to prove: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant[s'] use of the mark to identify goods or services causes a likelihood of confusion."  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  I am not convinced that Plaintiff has sufficiently demonstrated that it will be able to prove the second of these elements—that it owns the ATG mark.

Plaintiff does not contest that the ATG mark was originally used and registered with the United States Patent and Trademark Office (PTO) by Defendant Warren Chambers.  However, Plaintiff argues that it is now the legal owner of the mark because it purchased the mark from Chambers "under an Asset Purchase Agreement in 2011 and has continued to use the mark in commerce continuously since that time."  Pl. Reply at 2.  As evidence that ownership was legally transferred, Plaintiff submits an Abstract of Title from the PTO listing Chambers as the original Registrant of the mark and Plaintiff as the Assignee, and listing the conveyance for the assignment as the Asset Purchase Agreement ("Agreement").  Ex. A to Compl.

Plaintiff claims that this PTO registration is conclusive evidence as a matter of law that it owns the mark.  In support of this argument, Plaintiff points to the Lanham Act, which by its terms provides that registration of a particular mark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15 U.S.C. § 1115(b).  This analysis is superficial.  As the Second Circuit has warned, this clause should not be read so broadly as to preclude a district court from allowing any challenge to the recorded assignment of an incontestable registration, since that would "improperly conflate[] incontestability with the analytically distinct issue of whether a subsequent transfer of the marks was valid."  *Fed.*

2

*Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 63 (2d Cir. 2010).  Rather, "the question of the validity of the assignment is antecedent to the question of incontestability." *Id.* at 69.

A different section of the Lanham Act governs assignment of registered marks and outlines the procedure for informing the PTO that a registrant or subsequent owner has assigned a mark.  *See* 15 U.S.C. § 1060.  Under section 1060, the fact that an assignment is recorded with the PTO is "prima facie evidence of execution" of that assignment.  15 U.S.C. § 1060(a)(3).  However,

> [p]rima facie evidence of execution is not the same as conclusive evidence of the validity of an assignment.  As the PTO has stated, "[t]he mere act of recording [an assignment] document is a ministerial act," and "[t]he Assignment Branch [of PTO] does not examine the substance of the transaction;" rather, it records any assignment "that appears on its face to be an assignment."  *In re Ratny,* 24 U.S.P.Q.2d 1713, 1715 (Com'r Pat. & Trademarks 1992).  "Since the act of recording a document is not a determination of the document's validity," the existence of a recorded assignment "does not preclude a party from ... establishing its ownership of the mark in a proper forum, *such as a federal court."  Id.* (emphasis added); *see also* Louis Altman and Malla Pollack, 3 *Callmann on Unfair Competition, Trade & Monopolies* § 20:62 (4th ed. 2010).

*Sojuzplodoimport.*, 623 F.3d at 68.  Therefore, simply because Plaintiff submitted a copy of the Agreement to the PTO and that office subsequently designated the mark as being assigned from Chambers to UBU/Elements does not require me to ignore Chambers' challenge to the validity of that record.[2]  The high standard for a TRO demands that the Court inquire further to determine whether it is likely that Plaintiff will be able to prove the PTO's "ministerial act" of recording the assignment properly reflects ownership of the mark.

---

[2] It appears that this document was filed with the PTO in direct response to a cease and desist letter that Chambers sent asserting his ownership of the marks, which further supports my inclination to view it with caution.

I am not convinced that Plaintiff can prove it owns the mark simply by pointing to the Agreement.  The plain language of the Agreement [3] indicates that Defendant Elements Personal Care, Inc. promised to "sell, grant, convey, transfer, assign, and deliver to" Plaintiff the tangible and intellectual property associated with ATG.  Ex. A to Pl. Reply at 1.  The contract further provides that Defendant Elements Personal Care, Inc. promised to deliver any necessary documents to assign or convey its right, title, and interest in ATG to Plaintiff at a closing of sale meeting.  Ex. A to Pl. Reply at 2–3.  It appears from the testimony and affidavits of the parties that this closing never occurred, and therefore Defendants never assigned the marks to Plaintiff in writing.  For example, Chambers asserts he has never assigned any intellectual property pursuant to the Agreement.  Chambers Aff. at ¶ 28.  Chambers also points out that the Agreement illogically provides a closing date that precedes the date upon which the agreement was purportedly assigned. Agreement, Ex. A to Pl.'s Reply at 2.  Finally, Plaintiff's principal Alan Blau testified at the June 7, 2016 hearing that he did not notice that the formalities involved in recording the assignment of the mark had not been performed until he received a cease and desist letter from Chambers challenging ownership of the marks.

The Lanham Act requires that assignments of federally registered trademarks be in writing.  15 U.S.C. § 1060.[4]  Furthermore, "[a]n agreement to assign a mark in the future is not a present assignment and does not vest legal title at the time of the agreement."  3 McCarthy on

---

[3] Chambers argues that the Agreement itself is invalid because the copy submitted by Plaintiff is an altered version of the one he signed.  However, since the version he submits as the "original" Agreement does not differ in a way that is material to my analysis, I need not decide whether either of the documents presented to the Court is genuine at this time.

[4] There are a limited number of exceptions.  For example, an assignment in writing may not be necessary to transfer certain common law rights in a trademark.  *See Warden v. Falk*, No. 11-2796, 2011 WL 3204815, at *6–7 (E.D. Pa. July 27, 2011).  In addition, a merger of one corporation into another effects a transfer of the marks owned by the acquired corporation, even without a formal assignment.  *Am. Mfg. Co., Inc.*, 192 U.S.P.Q. (BNA) ¶ 498 (P.T.O. Aug. 31, 1976).  None of these exceptions appears to be relevant to Plaintiff's claims, but this opinion should not be construed to limit Plaintiff's ability to raise such arguments if appropriate.

Trademarks and Unfair Competition § 18:4 (4th ed.) (citing *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 779 (Fed. Cir.1996), *amended on reh'g in part by*, 104 F.3d 1296 (Fed. Cir. 1996)); *see also Li'l' Red Barn, Inc. v. Red Barn System, Inc.,* 322 F.Supp. 98 (N.D. Ind. 1970), *aff'd per curiam,* 174 U.S.P.Q. 193 (7th Cir. 1972) ("[T]he rule is well established that a mere agreement for the future assignment of a trademark is not an assignment of either the mark itself or the goodwill attached to it.").  I am therefore persuaded that while Defendants may have promised to assign the mark, there is insufficient evidence that such a promise was fulfilled and an assignment was executed.  There are too many unresolved factual issues for me to conclude at this point that Plaintiff is likely to succeed on the Lanham Act claims asserted in the Complaint.

Because ownership of the marks is also largely dispositive of Plaintiff's likelihood of success on its Tortious Interference claim, I also find it is inappropriate to grant a Temporary Restraining Order regarding that claim at this time.

Per Plaintiff's request at the June 7 hearing, a conference call is scheduled for **Friday, June 24, 2016 at 2:00 p.m.** to discuss expedited discovery and a preliminary injunction hearing. Counsel for Plaintiff is requested to initiate the call with opposing counsel and then call Judge McHugh's Chambers at 267-299-7301.

      /s/ Gerald Austin McHugh
United States District Court Judge